UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DARRYL L. MOON, | CASE NO. 3:20-CV-01773-JGC |
| Plaintiff, | JUDGE JAMES G. CARR |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION |
| Defendant. | |

### INTRODUCTION

Plaintiff Darryl L. Moon filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 12, 2020, this matter was referred for preparation of a report and recommendation pursuant to Local Rule 72.2, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 25, 2021). Following review, and for the reasons stated below, I recommend the District Court **REVERSE** the Commissioner's decision and **REMAND** the case for additional proceedings consistent with this recommendation.

### PROCEDURAL BACKGROUND

Mr. Moon filed for DIB and SSI on March 26, 2018, alleging a disability onset date of June 27, 2017. (Tr. 110, 123). He amended his alleged disability onset date to July 1, 2017. (Tr. 285).

1

His claims were denied initially on May 25, 2018 and on reconsideration on August 15, 2018. (Tr. 136-37, 172-73). He then requested a hearing before an administrative law judge. (Tr. 196). Mr. Moon (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on May 21, 2019. (Tr. 15). In an August 8, 2019 written decision, the ALJ found Mr. Moon was not disabled. (Tr. 15-29). The Appeals Council denied Mr. Moon's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1; *see* 20 C.F.R. §§ 404.955, 404.981). Mr. Moon timely filed the instant action on August 11, 2020. (ECF #1).

FACTUAL BACKGROUND

I.     ADMINISTRATIVE HEARING

The following summarizes the testimony of Darryl Moon and VE James Breen at the hearing before the ALJ.

Mr. Moon asked the ALJ for permission to move about the room during the hearing because he was not comfortable. (Tr. 51). Mr. Moon testified he lives with his three children in a two-story house. (Tr. 50-51). He gets winded when going up or coming down the stairs. (Tr. 51). Mr. Moon experiences low back pain that shoots down his right leg, which sometimes goes numb, and into his toes. (Tr. 52, 55). He has had low back pain for a number of years. (Tr. 52). The pain shooting down his right leg gets "really bad" when Mr. Moon is constantly on his feet. (*Id.*). The pain level varies and is sharper some days more than others. (Tr. 55). He uses a heating pad and stretching to alleviate the pain but stretching rarely helps. (Tr. 56). He tried Lyrica but it did not help with the pain. (Tr. 60). Mr. Moon uses a cane to relieve pain when standing and for ambulation. (Tr. 80). Mr. Moon also experiences neck pain. (Tr. 56). He likens it to a "crook in

the neck," but sharper. (*Id.*). The intensity of his neck pain varies and never completely goes away. (Tr. 70).

Mr. Moon had shoulder surgery, although it had not completely healed as of the hearing date. (Tr. 57). He is unable to sleep on his left side because he can feel the metal in his left shoulder. (*Id.*). He may need another surgery on the left shoulder. (*Id.*). He is unable to reach overhead with his left arm. (Tr. 71). He uses a stick with a claw on the end to reach overhead objects. (Tr. 72).

Mr. Moon testified that his physician recently referred him to a pain management doctor. (Tr. 53). Mr. Moon was previously under the care of a pain management doctor in Lima, Ohio, but he was discharged after not attending appointments due to transportation issues. (*Id.*). Mr. Moon tried physical therapy for back pain in 2017, but it was not helpful. (Tr. 53-54).

Mr. Moon sees a counselor and psychiatrist, who prescribes medications for Mr. Moon's depression and anxiety. (Tr. 62-63). Mr. Moon loses focus and has difficulty concentrating. (Tr. 64: "You may be talking to me and I may be listening to you. I mean, not – well, listening to you but if you go back and you ask me something about something you said I probably wouldn't even remember what you said."). Mr. Moon has anxiety attacks about once a week where "everything's overwhelming." (Tr. 72). Mr. Moon also endorses comprehension and memory issues. (Tr. 73). For instance, he can read a passage in a book but not remember anything about it. (*Id.*).

Mr. Moon uses maintenance and emergency inhalers for breathing issues. (Tr. 65). Hot, muggy air induces coughing. (*Id.*). He keeps his emergency inhaler in his pocket if he has to walk or go up and down stairs. Mr. Moon has experienced three or four coughing episodes that caused him to "black out." (Tr. 67).

3

Mr. Moon estimates his pain keeps him in bed about four days a week, but often he must "get up and deal with it." (Tr. 73). He sometimes naps for about two hours during the day because some of his medications make him sleepy. (Tr. 73-74). Mr. Moon has had to miss his children's sporting events because of his back issues and certain of his medications kept him from being in direct sunlight. (Tr. 64). He attends the necessary parent-teacher conference meetings for his children despite the pain. (Tr. 65).

During the day, Mr. Moon is able to read and talks to his mother on the telephone. (Tr. 65). He can cook dinner for his children. (Tr. 60). His children help with the household chores, including vacuuming, sweeping floors, and mowing the lawn. (Tr. 61). Mr. Moon does the laundry, but his children bring their dirty clothes to the laundry room—he just starts the machine. (*Id.*). He also goes grocery shopping, but he brings his children to the store to help him. (Tr. 62). Before Mr. Moon began using a cane for ambulation, he used motorized carts to get around the store. (Tr. 61). His physician prescribed the cane about two weeks before the hearing date. (Tr. 68-69).

The VE then testified. The ALJ posed the following hypothetical and asked Mr. Breen to determine if such an individual could perform Mr. Moon's past relevant work: an individual of Mr. Moon's age, education, and past work history able to perform less than a full range of light work; can lift, carry, push, and pull twenty pounds occasionally, ten pounds frequently; sit for six hours in an eight-hour workday with the ability to stand and stretch one minute at the end of each hour, not to exceed ten percent of the day; stand and/or walk for six hours in an eight-hour workday with no prolonged walking greater than thirty minutes; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, crouch, kneel, stoop, and crawl; cannot reach

overhead with the non-dominant left upper extremity but can frequently handle and finger bilaterally; with occasional exposure to extreme cold, heat, humidity, and wetness; occasional exposure to dust, fumes, odors, gases, and other pulmonary irritants; must avoid exposure to unprotected heights and fast-moving and/or dangerous machinery; can understand, remember, and carry out simple, routine tasks; can make judgments on simple work; can respond appropriately to usual work situations and changes in a routine work setting with few and occasional changes; can have occasional interaction with the general public, supervisors, and coworkers; but cannot perform work that requires a daily production quota, such as piecework. (Tr. 76-77). Mr. Breen testified such an individual could not perform Mr. Moon's past relevant work, but identified other positions, including a hand packager, a mail sorter, and an office helper. (Tr. 78-79).

The ALJ posed the same hypothetical with the following changes: the individual would be limited to the sedentary exertional level and could stand and/or walk for two hours in an eight-hour workday with no prolonged walking greater than thirty minutes. (Tr. 79). According to the VE, such an individual could not perform Mr. Moon's past relevant work. (*Id.*). He identified other positions the hypothetical individual could perform, including an eyeglass assembler, a circuit board tester, and a costume jewelry maker. (Tr. 80).

If an individual needed occasionally to use an assistive device to aid in ambulation and when standing for more than ten minutes at a time, that individual would still be able to perform sedentary positions previously identified. (Tr. 82).

The VE further testified that employers generally tolerate about ten to twelve unscheduled absences per year, or about one per month. (Tr. 82-83). Outside of regularly scheduled breaks (two

5

15-minute breaks and a 30- or 60-minute lunch break), an employer generally tolerates an employee being off-task no more than 15% of the workday. (Tr. 83).

## II. PERSONAL AND VOCATIONAL EVIDENCE

Mr. Moon was 44 years old at the time of his amended alleged onset date, and 46 years old at the time of the administrative hearing. (Tr. 42, 110). He attained his GED. (Tr. 42). Mr. Moon's past relevant work includes store laborer, spray machine operator, and assembler. (Tr. 27-28).

## III. RELEVANT MEDICAL EVIDENCE[1]

After undergoing a mental health assessment in January 2018, Mr. Moon was diagnosed with adjustment disorder and mixed depressed and anxious mood. (Tr. 1759). Mr. Moon experienced depression and anxiety beginning two or three years prior but did not address the issues with a psychiatric clinician until 2018. (Tr. 1762). He endorsed sleep and appetite disturbances, and feelings of hopelessness, low self-esteem, helplessness, worthlessness, and excessive worry. (Tr. 1759). He was referred for individual therapy. (Tr. 1760). Mr. Moon was prescribed medications for depression and anxiety. (Tr. 1763). He returned to the office for medication management. (Tr. 1768). Though Mr. Moon exhibited a logical thought process, full affect, and euthymic mood, he endorsed feelings of guilt and anxiety. (*Id.*). His depression and anxiety medications were adjusted. (*Id.*).

---

[1] Mr. Moon's brief alleges the ALJ erred with respect to the mental residual functional capacity assessment. Though the administrative record contains medical evidence of other impairments, I address only the medical evidence related to Mr. Moon's mental health impairments.

Additionally, the Commissioner's brief referenced personal details that are not relevant to the determination of a claimant's ability to perform work. Accordingly, in preparing this Report and Recommendation, I considered only the evidence relevant to the issues properly before me.

6

## IV.  STATE AGENCY PSYCHOLOGICAL CONSULTANTS

State Agency psychological consultants reviewed Mr. Moon's records at the initial and reconsideration levels. At the initial level, the psychological consultant prepared a mental residual functional capacity assessment and rated Mr. Moon's limitations in concentration and persistence, social interaction, and adaptation. (Tr. 110-26).

The psychological consultant determined Mr. Moon was not significantly limited in the following abilities: carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. (Tr. 118-20, 131-33).

The psychological consultant determined Mr. Moon was moderately limited in the following abilities: carry out detailed instructions; maintain attention and concentration for extended periods of time; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (Tr. 118-19, 131-32).

7

The psychological consultant found Mr. Moon could perform adequately in a work setting without strict production requirements, interact superficially with the general public, co-workers, and supervisors; and complete tasks in a static setting that does not have frequent change of job duties or routines. (Tr. 119-20, 132-33). At the reconsideration level, another psychological consultant adopted the same limitations. (Tr. 150-52, 167-69).

THE ALJ'S DECISION

The ALJ's decision, dated August 8, 2019, included the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The claimant has not engaged in substantial gainful activity since July 1, 2017, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease; chronic obstructive pulmonary disease (COPD)/emphysema/asthma; left shoulder osteoarthritis with rotator cuff tear/impingement, status post April 2018 arthroplasty surgery; left bicep tendinitis; left carpal tunnel syndrome; and psychological conditions variously described as adjustment disorder with anxiety and depressed mood (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours out of an 8-hour workday with the ability to stand and stretch one minute at the end of each hour, not to exceed 10 percent of the day. He can stand and/or walk for 6 hours out of an 8-hour workday with no prolonged walking greater than 30 minutes. The claimant can never climb ladders, ropes, or scaffolds

and can occasionally climb ramps and stairs, crouch, kneel, stoop, and crawl. With the non-dominate [*sic*] left upper extremity, he cannot reach overhead and can frequently handle and finger with the bilateral upper extremities. He can have occasional exposure to extreme cold, heat, humidity, and wetness as well as, dust, fumes, odors, gases, and other pulmonary irritants. He cannot work around unprotected heights or around fast moving and/or dangerous machinery. The claimant can understand, remember, and carryout [*sic*] simple, routine tasks, make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting with few and occasional changes. He can have occasional interaction with the general public, supervisors, and coworkers. He cannot perform work that requires a daily production quota, i.e., piecework.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 18, 1973 and was 44 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-29).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

9

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an

accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to

establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Mr. Moon asserts one error: the ALJ failed to account properly for the limitations opined by the state agency psychological consultants when crafting Mr. Moon's residual functional capacity. (Pl.'s Br., ECF #15, PageID 2490). Mr. Moon takes issue with the ALJ finding the state agency psychological consultants "mostly persuasive" but failing to impose, or even address, the consultants' limitation to interact only superficially with the general public, coworkers, and supervisors. (*Id.* at 2492).

In response, the Commissioner asserts the ALJ satisfied the requirements for considering and discussing the state agency opinions and is not required to adopt all the limitations set forth by state agency consultants. (Comm'r's Br., ECF 16-1, PageID 2507-508). The Commissioner also contends that even if the ALJ erred, Mr. Moon has failed to show the error was harmful. (*Id.* at PageID 2511). I agree with Mr. Moon.

The determination of an individual's residual functional capacity is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Even so, substantial evidence must support the Commissioner's residual functional capacity finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Commissioner is correct that an ALJ is

12

not required to adopt a state agency opinion verbatim, even if the ALJ concludes the opinion was persuasive. *See, e.g., Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-CV-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020) (citing *Salisbury v. Comm'r of Soc. Sec.*, No. 5:11-CV-2277, 2013 WL 427733, *7 (N.D. Ohio Feb. 1, 2013)). Nevertheless, where an ALJ determines a medical source opinion is persuasive, the ALJ must incorporate the limitation in that finding or provide a sufficient explanation for declining to do so. *Slone v. Comm'r of Soc. Sec.*, No. 2:20-cv-4850, 2021 WL 4901498, at *5 (S.D. Ohio Oct. 21, 2021) (citing *Hankinson,* 2020 WL 240812 at *2). Further support for this proposition comes from the Social Security Administration's own policy interpretation. Social Security Ruling 96-8p explicitly states: "The RFC assessment *must always* consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator *must* explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 (emphasis added).

> Here, the ALJ evaluated the state agency psychological consultants' opinions as follows:
>
> State Agency psychological consultant, Robyn Murray-Hoffman, Ph.D., concluded [Mr. Moon] was expected to be able to perform adequately in a work setting without strict production requirements; retained the capacity to interact superficially with the general public, coworkers, and supervisors; and complete tasks in a status setting that did not have frequent changes of job duties or routines. Upon reconsideration, Todd Finnerty, Psy.D., agreed with the findings of Dr. Murray-Hoffman and did not further limit [Mr. Moon]. The undersigned finds these opinions are mostly persuasive, however, new evidence received in the current file, including mental status examinations and treatment notes, supports limiting [Mr. Moon] to simple, routine tasks.

(Tr. 27). The ALJ goes on to state the "residual functional capacity assessment is supported by State agency medical and psychological consultants who are experts in their fields of knowledge and have considerable program experience." (Tr. 27).

13

Here, the ALJ's residual functional capacity assessment that Mr. Moon was limited to occasional interaction conflicts with the psychological consultants' opinions that he was limited to superficial interaction. Many courts in the Sixth Circuit have recognized that the terms "occasional interaction" and "superficial interaction" are not interchangeable. "Occasional contact refers to the quantity of time spent with others, whereas superficial contact goes to the quality of the interactions." *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18, 2018 WL 625473, at *4 (S.D. Ohio Nov. 30, 2018) (internal quotations omitted); *Redd v. Comm'r of Soc. Sec.*, No. 1:20-cv-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) ("With regard to social limitations, courts have distinguished limitations that concern 'the quality or nature of interactions' from limitations that concern 'the quantity of time involved with those interactions.'").

As a result, courts within the Sixth Circuit routinely find that an ALJ may not replace a limitation regarding "superficial interaction" with one regarding "occasional interaction," absent explanation. *See, e.g., Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (remanding because "where, as here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so[,]" otherwise, the court is unable to "conduct[ ] meaningful review to determine whether substantial evidence supports his decision"); *Fenton v. Comm'r of Soc. Sec.*, No. 1:20-CV-413, 2021 WL 3721212, at *3 (S.D. Ohio Aug. 23, 2021) (ALJ committed reversible error by assigning great weight to opinion that the plaintiff was limited to superficial interactions but including an occasional interaction limitation in plaintiff's RFC in its place without explaining the substitution), *report and recommendation adopted,* No. 1:20-CV-413, 2021 WL 4077990 (S.D. Ohio Sept. 8, 2021); *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-CV-

3820, 2021 WL 3087639 (S.D. Ohio July 22, 2021) (same), *report and recommendation adopted*, No. 2:20-CV-3820, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021); *Clampit v. Comm'r of Soc. Sec.*, No. 3:20-CV-1014, 2021 WL 3174111, at *2 (N.D. Ohio July 26, 2021) (same).

Here, the ALJ found the state agency psychological consultants' opinions to be mostly persuasive but replaced the state agency opinions' "superficial interaction" limitations with his own "occasional interaction" limitation. The ALJ did not offer an explanation for the substitution, leaving the court to speculate whether the ALJ found the "superficial" limitation not credible or did not otherwise appreciate the important distinction between "occasional" and "superficial." As such, this court cannot determine if the ALJ's residual functional capacity assessment is supported by substantial evidence.

At Step Four of the sequential analysis, the ALJ determined Mr. Moon could not perform his past relevant work. (Tr. 27). The burden shifted to the Commissioner to establish whether Mr. Moon has the residual functional capacity to perform available work in the national economy. The ALJ did not incorporate the "superficial" limitation into his hypothetical to the VE, and therefore, I am unable to determine whether the inclusion of the limitation would have affected the outcome. Despite the Commissioner's arguments to the contrary, this is not harmless error.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **REVERSE** the Commissioner's decision denying DIB and SSI and **REMAND** this matter for proceedings consistent with this recommendation.

Dated: November 1, 2021

15

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).